## TEXAS CO. v. MOSSHAMER.

No. 22330.   June 18, 1935.

Rehearing Denied Dec. 3, 1935.

J. H. Hill, John R. Ramsey, B. W. Griffith, and Sol Kaufman (Harry T. Klein, of counsel), for plaintiff in error.

Frank T. McCoy, John R. Pearson, and John T. Craig, for defendant in error.

OSBORN, V. C. J.· C. R. Mosshamer, hereinafter referred to as plaintiff, filed this action in the district court of Osage county against the Texas Company, hereinafter referred to as defendant, to recover damages sustained from the poisoning of cattle by salt water and oil which had escaped from a separator tank owned by defendant. From a jury verdict in favor of plaintiff, defendant has appealed.

Defendant was the owner of an oil and gas mining lease on the southwest quarter of section 36, township 22, range 11, and the northwest quarter of section 1. township 21, range 11, in Osage county. These two tracts of land will be hereinafter referred to as the north tract and the south tract. Plaintiff was the owner of a grazing lease on the south tract. The tracts were immediately adjoining, but there was no fence between them. Defendant had constructed a separator tank and two small storage tanks near the south line of the north tract and a salt water pond near the north line of the south tract. The land sloped from the tanks toward the salt water pond and a ditch connected the tanks with the salt water pond. The salt water pond was properly fenced. A two-inch siphon had been driven into the separator tank near the bottom thereof by which the contents were siphon-ed into a box leading to a ditch and through the ditch to the salt water pond. On the night of January 26, 1930, the siphon had been pulled loose from the tank and oil and salt water flowed out over the ground in the immediate vicinity of the separator and storage tanks and down past the salt water pond on the south tract.

It is alleged that defendant wrongfully, unlawfully, and in direct violation of section 7969, C. O. S. 1921 (11580, O. S. 1931), caused and permitted oil, salt water and other poisonous substances to escape from its oil and gas mining operations to run over the surface of the land and into a certain draw or branch traversing plaintiff's pasture, and that said oil, salt water, and other deleterious substances were allowed and permitted by said defendant to remain upon the surface of the land and to stand in certain holes or pools along said draw or branch so that the same were exposed and accessible to plaintiff's cattle; that said cattle drank said oil and salt water, and as a result thereof three cows died, 20 cows lost their calves, and 85 others were damaged and depreciated in value.

By way of answer defendant denied generally the allegations of the petition and alleged that if plaintff suffered any damage or injury to his cattle, such damage was not due to the defendant's operations, but was due to some other cause and was not contributed to by defendant. It is further alleged that defendant operated its property in a diligent and careful manner, used all known precaution to prevent the discharge of salt water, oil or refuse upon the surrounding lands, and is not guilty of negligence, carelessness or violation of any law.

This action is predicated on the provisions of section 11580, O. S. 1931. which is as follows:

"No inflammable product from any oil or gas well shall be permitted to run into any tank, pool or stream used for watering stock; and all waste oil and refuse from tanks or wells shall be drained into proper receptacles at a safe distance from the tanks, wells or buildings, and he immediately burned or transported from the premises, and in no case shall it be permitted to flow over the land. Salt water shall not be allowed to flow over the surface of the land."

Since the adoption of the Revised Laws of 1910, this statute has been treated as a penal statute and also as a remedy for the benefit of all persons who may suffer injury by violation of its terms. Since the law positively requires that all waste oil and refuse

from tanks or wells shall be drained into proper receptacles and be immediately burned or transported from the premises and in no case shall the same or salt water be permitted to flow over the land, it has been re peatedly held that a failure to perform the duty thus enjoined upon the operator of an oil well is negligence per se, and no other negligence need be pleaded or proved. Knupp Oil Corp. et al. v. Lohman, 129 Okla. 288, 264 P. 824; Comanche Drilling Co. v. Shamrock Oil & Gas Co., 122 Okla. 253, 254 P. 20; Owen-Osage Oil & Gas Co. v. Long, 104 Okla. 242, 231 P. 296; Devonian Oil Corporation v. Hurt, 169 Okla. 114, 36 P. (2d) 24.

It is contended by defendant that plaintiff failed to make out a case of liability as against the defendant. It may be noted that during the course of the trial the principal contentions relied upon by defendant followed the allegations of its answer. These contentions were that plaintiff's cattle were not damaged, and a great portion of the evidence offered by defendant was for the purpose of substantiating such contention. As a second ground of defense it was sought to establish as a fact that plaintiff's cattle trespassed upon defendant's property and knocked loose the connection leading from the separator tank and thus caused the escape of the oil and salt water, and by reason thereof defendant is not responsible for any damage that accrued thereby.

Since the cause was tried in the lower court this court rendered an opinion in the case of Peters Petroleum Co. v. Alred, 156 Okla. 249, 10 P. (2d) 705. Defendant relies upon the rule announced in that case to substantiate the proposition that plaintiff has failed to make out a case of liability. In that case the defendant oil operator was the owner in fee of a part of the land and had an oil and gas mining lease and an agricultural or surface lease on the remainder. The plaintiff's cattle trespassed upon the land and went through a fence surrounding one of the wells and drank salt water and oil out of tanks or ponds located within the enclosure. The fence had been taken down for the purpose of removing a boiler. In that case no claim was made that oil or salt water had been permitted to flow on the land of plaintiff, but the sole ground for recovery was the failure of the defendant to maintain a fence around the premises where it was operating. The decision turned upon the point that there is no statute requiring the fencing of premises upon which oil operations are being carried on.

The case of Tidal Oil Co. v. Pease, 153 Okla. 137, 5 P. (2d) 389, also decided since the trial of this cause in the lower court, is relied upon by defendant. Particular attention is directed to the language in the opinion which points out that section 11580, supra, was not intended to prohibit the owner of land from permitting any inflammable products from any oil or gas well to run into any tank or pool used for watering stock although located on his own premises. It is further pointed out in said opinion that the owner of land ought not to be prohibited from the full use and benefit thereof so long as he does not by such use injure other persons.

The above authorities are not controlling herein. In this case defendant was not the owner of either the south tract or the north tract, but was the owner only of an oil and gas mining lease on both tracts.

The rights and privileges of a lessee under such circumstances have been defined several times by this court. In the case of Mary Oil & Gas Co. v. Raines, 108 Okla. 222, 235 P. 1085. it is said:

"In Sanders v. Davis, 79 Okla. 253, 192 P. 694, this court held:

" 'By virtue of the terms of the usual and ordinary oil and gas mining lease, the lessee is entitled to the possession of such portions of the surface of the land covered by the lease as may be reasonably necessary for the development and exploration of the leased premises under the terms of the lease.'

"Also, in Rennie v. Red Star Oil Co., 78 Okla. 208, 190 P. 391, this court held:

" 'In an oil and gas lease the lessee is entitled to the possession of the lands so leased to the extent reasonably necessary to perform the obligations imposed on the lessee by the terms of the lease.' Citing Brennan v. Hunter, 68 Okla. 112. 172 P. 49; Thornton on Oil & Gas, vol. 1, sec. 110; Westmoreland Cambria Nat. Gas Co. v. DeWitt (Pa.) 18 Atl. 724; Greensboro Natural Gas Co. v. Fayette (Pa.) 49 Atl. 768; Galbreath v. McLane, 51 Okla. 754, 152 P. 355."

In the case of Rennie v. Red Star Oil Co., supra, it is said:

"In considering this contention, we should inquire as to the rights of the lessee under the terms of the lease. Under an oil and gas lease, the possession of the leased premises by the lessor and lessee is what might be termed a concurrent possession; that is to say, the lessee is entitled to enter upon the land leased and entitled to the possession of such parts and portions thereof necessary for developing the premises for oil and gas under the terms of the lease and to do the

204

things necessary to make the operation successful."

See, also, Cosden Oil & Gas Co. v. Hickam, 114 Okla. 86, 243 P. 226.

In the instant case, defendant was the owner of an oil and gas mining lease on both tracts of land, and was thereby entitled to use such portion of the land as was reasonably necessary for the development and exploration of the leased premises, under the terms of the lease, but at this point defendant's rights terminated. Plaintiff was the owner of a grazing lease on the south tract only, and his rights were likewise determined by the terms of his lease. His right to the use of said premises for grazing purposes is not challenged. He had no lease on the north tract, but this fact does not determine the issue involved here, for the reason that the escaping refuse flowed over both tracts. It is not contended that there is any difference in the responsibility of defendant for damages incurred by the cattle drinking the salt water and oil on the two separate tracts, but it is sought to escape liability solely on the ground that the statute has no application for the reason that there was an oil and gas mining lease on both tracts. We must give the statute a sensible interpretation and one which effectuates the intention of the lawmakers in its enactment. To follow defendant's theory would in a large measure destroy the full force and effect of the statute. It must have been contemplated that there would in some cases be a concurrent possession, and a use of the land for different purposes and by different persons. The statute seeks to give effect to the rights of both parties. It expressly provides for the manner of disposal of oil, refuse, and salt water from oil and gas wells, and further provides that such refuse and salt water shall in no event be allowed to flow over the surface of the land. We find nothing in the statute which either expressly or by necessary implication fixes a different responsibility upon the operator of an oil well, where the operator is the owner of an oil and gas mining lease on the land where the damage occurs. The statute prohibits, and negligence as a matter of law is implied in the absence of a showing of willful acts on the part of plaintiff causing his damage.

The record in this case discloses that the cattle were found in an injured condition below the salt water pond, standing in oil and salt water. There is no testimony to the effect that any of said cattle were upon the north tract, or that any injury or damage was done to them on said north tract. The court submitted by proper instructions to the jury the question of the damage to the cattle sustained by drinking salt water and other deleterious substances on the south tract. The verdict of the jury was in favor of plaintiff and the issue as to where the damage occurred is concluded by said verdict. From a careful review of all of the record and the instructions of the court, we conclude that the applicable issues of law were properly submitted to the jury and that there is ample competent evidence to sustain the verdict.

Various other contentions are raised and argued in the briefs. These have been carefuly examined, and we do not find sufficient merit in any of them to justify a reversal of this cause.

The judgment is affirmed.

McNEILL, C. J., and RILEY, BAYLESS, BUSBY, PHELPS, CORN, and GIBSON, JJ., concur. WELCH, J., absent.